UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMIE WALKER,

                              Plaintiff,

       v.

MS. MOLLY GEORGE, Nurse, MR. FAIZ
CHEEMA, Doctor Psychiatrist,
MS. MARGA GORDON, Lawyer,
MS. BEATRICE AUGUSTIN, Nurse, *and*
MR. KERCIUS JEAN, Tech Staff,

                              Defendants.

No. 21-CV-6070 (KMK)

<u>OPINION & ORDER</u>

---

Jamie Walker
Orangeburg, NY
*Pro Se Plaintiff*

Carrie Windland, Esq.
New York Attorney General's Office
New York, NY
*Counsel for Defendants Ms. Molly George, Mr. Faiz Cheema, Ms. Beatrice Augustin, and
Mr. Kercius Jean*

KENNETH M. KARAS, United States District Judge:

       Pro se Plaintiff Jamie Walker ("Plaintiff"), a patient at the Rockland Psychiatric Center

("RPC"), brings this Action against Ms. Molly George ("George"), Mr. Faiz Cheema

("Cheema"), Ms. Beatrice Augustin ("Augustin"), Mr. Kercius Jean ("Jean"; together with

George, Cheema, and Augustin, the "Moving Defendants"), and Ms. Marga Gordon ("Gordon";

together with Moving Defendants, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that

Defendants violated Plaintiff's Fourteenth Amendment rights via a series of incidents that took

place in late 2020 and early 2021.  (*See generally* Compl. (Dkt. No. 1).)[1]  Before the Court is

Moving Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 32).)  For the following reasons,

Moving Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Complaint, (*see* Compl.), and are assumed

to be true for the purposes of ruling on the instant Motion.  *See Div. 1181 Amalgamated Transit*

*Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per

curiam).

Plaintiff is currently a patient at RPC, a facility run by the New York State Office of

Mental Health which "provides treatment, rehabilitation, and support to adults 18 and older with

serious mental illness."  *See* Rockland Psychiatric Center, New York State: Office of Mental

Health, https://omh.ny.gov/omhweb/facilities/rppc/.[2]  Plaintiff alleges that several incidents took

place while he was being treated at RPC that violated his constitutional rights.

First, Plaintiff alleges that in the afternoon on October 8, 2020, he was sitting with a

group of patients participating in music group therapy when another patient—Asbel Deleon

("Deleon"), who Plaintiff refers to as "enemy patient"—punched the back of Plaintiff's chair

three times.  (*See* Compl. 15.)[3]  Plaintiff alleges that he first asked a nurse to help him fill out an

_____

[1] Gordon has not been served, (*see* Dkt. No. 22), and accordingly, has not yet appeared in this Action.

[2] "[I]t is clearly proper to take judicial notice" of information "retrieved from official government websites."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

[3] When citing to the Complaint, the Court refers to the ECF-stamped page numbers at the top-right hand corner of each page.

incident report, but that the nurse declined to help him.  (*See id.*)  Plaintiff alleges that he next

asked Cheema, a psychiatrist, to give him a copy of the videotape of the incident, and that

Cheema directed Plaintiff to speak to the treatment team.  (*See id.*)  However, Cheema refused to

either speak to the treatment team or call security on Plaintiff's behalf.  (*See id.*)  Plaintiff alleges

that on October 14, 2020, he asked the treatment team leader for a copy of the videotape, but that

the treatment team leader instructed Plaintiff to ask his lawyer for assistance.  (*See id.* at 16.)

Evidently, Plaintiff spoke with Gordon—an attorney with the New York Justice Center—about

the incident some time thereafter, and she declined to help Plaintiff acquire the videotape.  (*See

id.* at 16–17.)  The Court hereinafter refers to this collection of events as the "October 8, 2020

Incident."

Second, Plaintiff alleges that on December 30, 2020, another patient—possibly named

Renando Alcime ("Alcime")—punched him in the face three times as soon as Plaintiff stepped

out of the nurse's station.  (*See id.* at 4, 8.)  Plaintiff seems to allege that he spoke with a nurse

named Jean-Paul Cambry about this incident on February 22, 2021, who confirmed that Plaintiff

was assaulted by Alcime at approximately 7:40PM.  (*See id.* at 8.)  The Court hereinafter refers

to this collection of events as the "December 30, 2020 Incident."

Third, Plaintiff alleges that on February 21, 2021 at approximately 8PM, he asked Jean, a

"tech," to call 911 because Plaintiff was afraid of Alcime.  (*See id.* at 10.)  Plaintiff alleges that

Jean refused to call 911 for Plaintiff, so Plaintiff called 911 using the free telephone available to

patients at RPC.  (*See id.*)  Plaintiff alleges that after several rings, a 911 operator answered the

phone and Plaintiff asked to speak with a police officer.  (*See id.* at 11.)  Plaintiff alleges that he

was placed on hold and that after 15 minutes, he hung up the phone.  (*See id.*)  The Court

hereinafter refers to this incident as the "February 21, 2021 Incident."

Fourth, Plaintiff alleges that on March 26, 2021 at around 6:30PM, Augustin, a nurse, told Plaintiff that either he would be moved to a safer unit or his "enemy patient" would be moved on March 29, 2021.  (*See id.* at 7.)  However, neither Plaintiff nor his "enemy" was moved, and Plaintiff was not provided with an explanation.  (*See id.*)  The Court hereinafter refers to this incident as the "First March 26, 2021 Incident."

Fifth, Plaintiff alleges that on the same day, at 6:37PM, he asked George, a nurse, to give him medical treatment for a wound on his forehead.  (*See id.* at 9.)  However, neither George nor any other staff member gave him treatment.  (*See id.*)  The Court hereinafter refers to this incident as the "Second March 26, 2021 Incident."

B.  Procedural History

Plaintiff's Complaint was docketed on July 13, 2021.  (*See* Compl.)  On August 17, 2021, Plaintiff's application to proceed in forma pauperis ("IFP") was granted, (*see* Dkt. No. 5), and on September 8, 2021, the Court entered an Order of Service, (*see* Dkt. No. 9).  On November 10 December 8, 2021, the U.S. Marshal's Service filed service receipts indicating that George, Cheema, Augustin, and Jean were successfully served, (*see* Dkt. Nos. 16, 18–19), and on December 9, 2021, the U.S. Marshal's Service filed a service receipt indicating that Gordon was not successfully served, (*see* Dkt. No. 22).  On December 17, 2021, the Court granted Plaintiff a 60-day extension to serve Gordon.  (*See* Dkt. No. 24.)  To date, Gordon has not been served. (*See generally* Dkt.)

On January 20, 2022, Moving Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Dkt. No. 29.)  The Court adopted a briefing schedule on January 24, 2022.  (*See* Dkt. No. 30.)  Pursuant to that schedule, Moving Defendants filed their Motion To Dismiss on February 23, 2022.  (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 33).)  Plaintiff filed his Opposition on April 7, 2022.  (*See* Pl.'s

Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 35).)  Moving Defendants filed their

Reply on May 2, 2022.  (*See* Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.")

(Dkt. No. 41).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when a plaintiff proceeds pro se, the Court "may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), and, moreover, must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  That said, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

Liberally construed, Plaintiff brings (1) a failure to protect claim based on the October 8, 2020 Incident, the December 30, 2020 Incident, the February 21, 2021 Incident, and the First March 26, 2021 Incident; and (2) a claim of deliberate indifference to medical needs based on the Second March 26, 2021 Incident.  (*See generally* Compl.; *see also id.* at 3, 5 (claiming that Plaintiff's "[right] of staff protection" was violated and that Plaintiff "did not receive medical treatment").)  Plaintiff seeks $3 million in damages.  (*See id.* at 5.)  Moving Defendants seek to dismiss both claims on the ground that Plaintiff has failed to adequately state a claim for deliberate indifference as to any of the alleged incidents.  (*See generally* Pl.'s Mem.)

1.  Eleventh Amendment Immunity

As a preliminary matter, to the extent Plaintiff seeks to bring his claims for damages against Moving Defendants in their official capacities as employees of RPC, those claims are dismissed as barred by the Eleventh Amendment.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  And, longstanding Supreme Court and Second Circuit precedent instructs that the Eleventh Amendment applies equally to suits brought against a state and state employees in their official capacities.  *See, e.g.*, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States." (collecting cases)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the State itself." (citation

omitted)); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent

that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit

against the state, and the official is entitled to invoke the Eleventh Amendment immunity

belonging to the state."); *see also KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir.

2013) (summary order) (noting that suit against a defendant in her official capacity as an officer

of the State of New York "effectively render[s] this a suit against the State of New York" (citing

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))).  Thus, "as a general rule, state

governments may not be sued in federal court unless they have waived their Eleventh

Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment

immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."

*Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted).

But, "Congress did not abrogate the States' sovereign immunity when it enacted []§ 1983 . . . ,

and New York has not waived its immunity."  *Walker v. NYS Just. Ctr. for the Prot. of People

with Special Needs*, 493 F. Supp. 3d 239, 246–47 (S.D.N.Y. 2020) (collecting cases).

       Because RPC is "part of the New York State's Office of Mental Health, a state agency,"

it is an arm of the state.  *Moultry v. Rockland Psychiatric Ctr.*, No. 17-CV-4063, 2018 WL

5621485, at *2 (S.D.N.Y. Oct. 30, 2018); *see also Leon v. Rockland Psychiatric Ctr.*, 232

F. Supp. 3d 420, 430 (S.D.N.Y. 2017) ("RPC, a state psychiatric facility operated by the New

York State Office of Mental Health . . . is an arm of the state." (collecting cases)).  Therefore,

RPC and its employees in their official capacities are immune from suit under the Eleventh

Amendment, and Plaintiff's claims against Moving Defendants in their official capacities are

dismissed.  *See Lombardo v. Freebern*, No. 16-CV-7146, 2018 WL 1627274, at *1 n.1

(S.D.N.Y. Mar. 30, 2018) (dismissing claims brought against employees of the Mid-Hudson

Forensic Psychiatric Hospital in their official capacities as barred by the Eleventh Amendment);

*McNair v. Kirby Forensic Psychiatric Ctr.*, No. 09-CV-6660, 2010 WL 4446772, at *7

(S.D.N.Y. Nov. 5, 2010) ("The individual defendants, all of whom are employees of [New York

State's Office of Mental Health], have been sued in both their official as well as individual

capacities.  Because the Eleventh Amendment bars claims against state employees sued in their

official capacities, [the] plaintiff's claims against the individual defendants in their official

capacities must be dismissed." (footnote omitted)).

### 2.  Failure to State a Claim

Before evaluating the merits of Plaintiff's failure to protect and deliberate indifference to

medical needs claims against Moving Defendants in their individual capacities, the Court makes

clear the standards that apply to these claims.  While claims challenging unconstitutional

conditions of confinement are most often brought pursuant to the Eighth Amendment, the Eighth

Amendment by its terms applies only to "punishment," and therefore, to claims brought by

individuals who have already been convicted of a crime.  *See, e.g.*, *City of Revere v. Mass. Gen.*

*Hosp.*, 462 U.S. 239, 244 (1983) ("Eighth Amendment scrutiny is appropriate only after the State

has complied with the constitutional guarantees traditionally associated with criminal

prosecutions.  The State does not acquire the power to punish with which the Eighth Amendment

is concerned until after it has secured a formal adjudication of guilt in accordance with due

process of law." (alterations omitted) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40

(1977))).  However, courts have held that "[i]ndividuals involuntarily committed to state

custody . . . have constitutionally-protected liberty interests in adequate food, shelter, clothing,

medical care, and conditions of reasonable care and safety."  *Lombardo*, 2018 WL 1627274, at

*15 (first alteration in original) (quoting *Vallen v. Plan*, No. 15-CV-703, 2016 WL 482026, at *3

(E.D.N.Y. Feb. 4, 2016)); *see also Youngberg v. Romero*, 457 U.S. 307, 324 (1982) ("We repeat

that the State concedes a duty to provide adequate food, shelter, clothing, and medical care. These are the essentials of the care that the State must provide.  The State also has the unquestioned duty to provide reasonable safety for all residents and personnel within the institution.").  "The rights of patients who are involuntarily committed have been likened to the rights of detainees awaiting trial," *Lombardo*, 2018 WL 1627274, at *15 (quoting *James v. Morgan*, No. 13-CV-526, 2014 WL 841344, at *2 (N.D.N.Y. Mar. 4, 2014)), which are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere*, 463 U.S. at 244.

Plaintiff has not made clear whether he was involuntarily committed to RPC at the time of the challenged conduct, but the Court finds it reasonable to infer that this is the case from Plaintiff's Complaint.  (*See generally* Compl.)  Moreover, Moving Defendants have proceeded on this assumption in their briefing, which Plaintiff has not challenged.  (*See* Defs.' Mem. 5–6; *see* Pl.'s Mem. 2 ("Plaintiff is admitted in a State facility and the State concedes a duty to provide adequate food, shelter, clothing, and medical care.").)  Accordingly, the Court analyzes Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment.  *See Lombardo*, 2018 WL 1627274, at *15 (citing *Vallen*, 2016 WL 482026, at *3–4).

To establish an unconstitutional conditions of confinement claim under the Fourteenth Amendment, a plaintiff must satisfy two elements: (1) that the plaintiff suffered a constitutional deprivation that was "objectively, sufficiently serious," and (2) that the defendant acted with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted); *see also Darnell v. Pineiro*, 849 F.3d 17, 30–35 (2d Cir. 2017).  The first element—referred to as the "objective" element—is analyzed in the same manner regardless of whether the claim is brought under the Eighth or Fourteenth Amendment: "[u]nder

both . . . Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)); *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) ("The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'  In assessing this component, the court must ask whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" (citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992))); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").  However, it is clear that "prisoners may not be deprived of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety'—and they may not be exposed 'to conditions that pose an unreasonable risk of serious damage to their future health.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (alterations and italics omitted) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).

"The second element . . . is applied somewhat differently to claims under the Eighth Amendment than the Fourteenth Amendment." *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 397 (S.D.N.Y. 2020) (quotation marks and alterations omitted).  The Fourteenth Amendment "imposes an objective standard, whereas the Eighth Amendment imposes a subjective standard." *Id.*; *see also Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *33 (S.D.N.Y. Mar. 26, 2021) ("The second element applies differently to claims under the Eighth

Amendment and the Fourteenth Amendment" (quotation marks omitted)).  "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  But "despite the slightly lower standard applicable to pretrial detainees, which is akin to objective recklessness, any § 1983 claim or violation of due process requires proof of a mens rea greater than mere negligence." *Falls*, 2021 WL 1164185, at *33 (quotation marks and alteration omitted).

<u>a.  Failure to Protect Claim</u>

As explained above, the Court construes Plaintiff's claims as to the October 8, 2021 Incident, the December 30, 2020 Incident, the February 21, 2021 Incident, and the First March 26, 2021 Incident as failure to protect claims.  (*See generally* Compl.)  While the Court is sympathetic to the fact that these incidents—and perhaps others—have caused Plaintiff to feel unsafe at RPC and either mistreated or ignored by RPC staff, (*see* Pl.'s Mem. 3), the Court agrees with Moving Defendants that Plaintiff has failed to state a cognizable failure to protect claim.

Each of these incidents involved either the alleged risk of or actual violence against Plaintiff at the hands of another patient: (1) the October 8, 2020 Incident involved Deleon apparently spontaneously punching the back of Plaintiff's chair and—liberally construed—Cheema's alleged failure to help Plaintiff prevent additional violence by Deleon; (2) the December 30, 2020 Incident involved Alcime apparently spontaneously punching Plaintiff in the face three times as Plaintiff stepped out of the nurse's station; (3) the February 21, 2021 Incident

involved Jean's alleged failure to help Plaintiff call 911 in order to prevent additional potential violence by Alcime; and (4) the First March 26, 2021 Incident involved Augustin's alleged failure to separate Plaintiff and an unidentified "enemy patient" (perhaps Deleon) to prevent further potential violence against Plaintiff. *See supra* I.A.  Generally, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), *aff'd*, 164 F.3d 618 (2d Cir. 1998).  Courts may find a substantial risk of serious harm "where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by [the] plaintiff regarding the altercation or a request by [the] plaintiff to be separated from the attacker." *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (quotation marks omitted).

Here, Plaintiff does not allege that either Deleon or Alcime's assault involved any forewarning; for instance, Plaintiff does not allege that he had been previously assaulted by Deleon or Alcime or that either Deleon or Alcime had previously threatened him.  (*See generally* Compl.)  As such, it does not appear that at the time the October 8, 2020 Incident and the December 30, 2020 Incident took place, there was an objective risk of serious harm to Plaintiff. *Cf. Fair v. Weiburg*, No. 02-CV-9218, 2006 WL 2801999, at *5 (S.D.N.Y. Sept. 28, 2006) (finding, on summary judgment, that where "the most reasonable inference is that the altercation occurred spontaneously . . . [the] [p]laintiff has failed to satisfy even the objective component of his due process claim").  And because neither of Deleon or Alcime's attacks appear to have been followed by subsequent violence or the threat of subsequent violence, none of Moving

13

Defendants can be charged with failing to protect Plaintiff thereafter, even if they failed to take steps that Plaintiff felt were necessary, such as calling 911 or moving Plaintiff to another unit. Put another way: if Plaintiff was never again the victim of violence at the hands of another patient or threatened with violence at the hands of another patient—as the Complaint suggests—then it appears Plaintiff was successfully protected.  *See Petitpas v. Griffin*, No. 20-CV-769, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020) ("While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation, so a pleading which merely asserts an unsubstantiated fear of harm fails to plead a substantial risk of serious harm." (quotation marks omitted)); *Lefebvre v. Pallito*, No. 12-CV-163, 2012 WL 7198435, at *10 (D. Vt. Dec. 17, 2012) (report and recommendation) ("The mere fear of an assault, however, does not constitute a sufficiently serious injury to state a claim under the Eighth Amendment . . . [because] however legitimate the plaintiff['s] . . . fears may have been, it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." (alterations omitted)).

Further, even if Plaintiff could satisfy the objective element, Plaintiff has failed to allege that any Moving Defendant recklessly failed to act with reasonable care to satisfy the mens rea component of Plaintiff's Fourteenth Amendment claim.  "Courts routinely deny [Eighth Amendment] deliberate indifference claims based upon surprise attacks," *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (quoting *Zimmerman v. Macomber*, No. 95-CV-882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001)), and the Court sees no reason not to apply the same logic here in the context of the Fourteenth Amendment as to Deleon and Alcime's initial attacks.  As another court in this District recently explained,

"[a]lthough Fourteenth Amendment claims only require that defendants have an objective awareness (i.e., that the defendant should have known), that standard is not satisfied when the surprise attack was a surprise to everyone involved, including [the] plaintiff." *Charles v. Rockland Cnty. Off. of the Sheriff*, No. 16-CV-166, 2019 WL 1299804, at *3 (S.D.N.Y. Mar. 21, 2019) (underlining omitted); *see also Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *6 (S.D.N.Y. July 10, 2014) (dismissing failure to protect claim under the Fourteenth Amendment where "[a]t most, [the] plaintiff alleges that [the defendants] acted negligently in failing to appropriately weigh a risk to [the] plaintiff's health that resulted in a relatively spontaneous fight"). As for the other incidents, it is axiomatic that Moving Defendants cannot have recklessly failed to act with reasonable care in failing to protect Plaintiff from actual or imminent risk of harm when Plaintiff was never actually harmed or in imminent risk of harm. *Cf. Villa v. Westchester County*, No. 19-CV-428, 2020 WL 4505968, at *7 (S.D.N.Y. Aug. 5, 2020) ("When an inmate informs correction officers about a specific fear of assault and *is then assaulted*, this is sufficient to proceed on a claim of failure to protect." (emphasis added) (alterations omitted) (quoting *Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *13 (S.D.N.Y. Mar. 30, 2016))).[4]

Accordingly, the Court finds that Plaintiff has failed to state a cognizable failure to protect claim.

---

[4] Moreover, the December 30, 2020 Incident is subject to dismissal for the separate and independent reason that Plaintiff has failed to allege that any of Moving Defendants was personally involved in the incident. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Here, the only RPC staff member alleged to be remotely involved in the December 30, 2020 Incident—albeit two months after the incident took place—is a nurse named Jean-Paul Cambry who has not been named as a defendant. *See supra* I.A.

<u>b.  Deliberate Indifference to Medical Needs Claims</u>

The Court construes Plaintiff's claim as to the Second March 26, 2021 Incident as a claim for deliberate indifference to medical needs.  (*See* Compl. 5, 9.)  While the Court, again, is sympathetic to the fact that Plaintiff feels he did not receive the medical care that he needed and deserved from George, the Court again agrees with Moving Defendants that Plaintiff has failed to state a cognizable claim for deliberate indifference to medical needs.

Even if the Court were to assume that George recklessly failed to act with reasonable care in allegedly failing to treat the wound on Plaintiff's forehead, Plaintiff has failed to plausibly allege that his forehead wound posed a substantial risk of serious harm to his health, as required to satisfy the objective component of his Fourteenth Amendment claim.[5]  Analyzing the objective component of a deliberate indifference to medical needs claim involves two inquiries: (1) "whether the [patient] was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  *Id.* (quotation marks omitted).  Plaintiff's allegation that he

---

[5] To be clear, the Court makes no such factual finding as to George's mental state.

suffered a "wound on [his] forehead," (Compl. 9), plainly does not meet this standard. *See, e.g.*,

*Morehouse v. Vasquez*, No. 17-CV-4836, 2020 WL 1049943, at *18 (S.D.N.Y. Mar. 4, 2020)

("District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black

eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference

claim." (quotation marks omitted) (collecting cases)); *Smolen v. Wesley*, No. 16-CV-2417, 2019

WL 4727311, at *8 (S.D.N.Y. Sept. 25, 2019) ("A broken finger or a cut where skin is 'ripped

off' does not pose a 'substantial risk of serious harm' because it 'does not produce death,

degeneration, or extreme pain.'" (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151

F. Supp. 2d 303, 311 (S.D.N.Y. 2011))); *El-Massri v. New Haven Corr. Ctr.*, No. 18-CV-1249,

2018 WL 4604308, at *9 (D. Conn. Sept. 25, 2018) ("Absent additional allegations of infection,

profuse bleeding, and/or other complications, a superficial cut does not rise to the level of a

serious medical need.  Because [the] [p]laintiff has failed to establish that his laceration

constituted a medical need that was objectively serious, his deliberate indifference claim as to

that laceration will be dismissed." (quotation marks omitted)).

     Accordingly, the Court finds that Plaintiff has failed to state a cognizable claim for

deliberate indifference to medical needs.

### III.  Conclusion

     For the foregoing reasons, Moving Defendants' Motion is granted.  However, because

this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice.

If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended

complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes

the Court to consider.  The amended complaint will replace, not supplement, the original

complaint.  The amended complaint must therefore contain *all* of the claims and factual

allegations Plaintiff wishes the Court to consider.  The Court will not consider factual allegations

contained in supplemental letters, declarations, or memoranda.  If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

The Court also briefly addresses Plaintiff's claims against Gordon, who—as explained above—has not yet been served.  *See supra* I.B.  Typically, where, as here, a plaintiff proceeds IFP, he or she is entitled to rely on service by the U.S. Marshal's Service.  *See* FED. R. CIV. P. 4(c)(3); *see also Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986).  Although Rule 4(m) specifies that defendants not served within 90 days of the filing of the complaint should be dismissed, district courts "have discretion to grant extensions, and may do so even in the absence of good cause."  *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) (quotation marks omitted).  The Second Circuit has stated that "a district court abuses its discretion when, among other things, it dismisses a complaint sua sponte for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service."  *Id.* (italics omitted).  However, "[p]laintiffs are not excused from complying with the applicable rules of service merely by virtue of their pro se status."  *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 321 (S.D.N.Y. 2016) (italics omitted) (dismissing case where pro se plaintiffs failed to effect service on defendants and failed to request an extension of time to serve).  Accordingly, the Court provides notice that Plaintiff must within 30 days request another extension of time to serve Gordon and thereafter, must either (1) request that the Court issue a second Order of Service or a *Valentin* Order (to identify the address at which Gordon may be served) or (2) arrange for alternative service, or his claims against Gordon may be dismissed.

The Clerk of Court is directed to terminate the pending motion, (Dkt. No. 32), and mail a

copy of this Opinion & Order to Plaintiff at the address listed in the docket.

SO ORDERED.

Dated:   June 24, 2022
         White Plains, New York

_____
            KENNETH M. KARAS
          United States District Judge